OPINION OF THE COURT
Harold Tompkins, J.
In this article 78 proceeding in the nature of certiorari, petitioners seek a review of respondent’s revocation of petitioners’ common show licenses for the operation of video games. The proceeding involves the issue of the constitutionality of a Department of Consumer Affairs regulation governing the city’s licensing of common shows as defined in section B32-40.0 of the Administrative Code of the City of New York. Video games are common shows as defined in the Administrative Code. For the reason set forth herein, this court finds the regulation constitutional. The petition is denied.
At issue here is regulation No. 1(a) of the Department of Consumer Affairs which requires that common show games be at least 200 feet from a public or private elementary or secondary school.
*416 Petitioners argue that the 200-foot rule is unconstitutionally vague and its application has been arbitrary and capricious. They request that respondent’s revocation of their licenses for violation of the 200-foot rule be annulled.
FACTS
Petitioners Tommy & Tina, Inc., and Ibrahim M. Dastagirzada (Dastagirzada) operate establishments that primarily serve pizza. Tommy & Tina, Inc., has 4 video games in operation within the premises and Dastagirzada 2 games. Both establishments are located in close proximity to elementary or secondary schools, Tommy & Tina, Inc., near P.S. 9 on Columbus Avenue, Manhattan, and Dastagirzada near P.S. 86, Parsons Blvd., Queens. Petitioner “Scientific Entertainment, Inc.”, owns the machines located in Tommy & Tina, Inc., and Musical Moment, Inc., has machines in Dastagirzada’s premises.
On June 10, 1981 a new regulation was issued by the Department of Consumer Affairs of the City of New York (Department) which expanded the general licensing of “common show games”. (Regulation No. l[a].) A video game is a common show game as defined in section B3240.0 of the Administrative Code. Under regulation No. 1(a), a license to operate one or more common show games shall not issue to any premises within 200 feet of a public or private elementary or secondary school.
On June 29, 1981, Tommy & Tina, Inc., was issued a common game show license for four video games after stating in its application that the premises were more than 200 feet from a school. Tommy & Tina, Inc., based this representation on the fact that it had already obtained a New York State Liquor Authority license which also requires that the premises be 200 feet from a school.
On July 15, 1981, a Department of Consumer Affairs inspector conducted an inspection of the premises of Tommy & Tina, Inc., and found the premises to be 167 feet and 5 inches from P.S. 9. A reinspection confirmed the initial finding. A hearing on the revocation of the license for common show games was scheduled for October 19, 1981, however, Tommy & Tina, Inc., failed to appear and the license was revoked. The hearing was then reopened, *417 Tommy & Tina, Inc., appeared and, after hearing, the licenses were revoked on March 30, 1982 for violation of regulation No. 1(a).
The sequence of events is much the same with respect to petitioner Dastagirzada. On June 30, 1981 he was issued common game show licenses for two video games to be located in his premises, Soraya Pizza. The application contained a representation that the premises were not within 200 feet of an elementary or secondary school. An inspection was conductéd on July 24, 1981 and the inspector determined that the premises were 96 feet 3 inches from P.S. 86. A reinspection confirmed the initial finding. In October, 1981 a hearing was held and on March 30,1982 said petitioner was informed that the licenses were revoked for violation of regulation No. 1(a).
The regulation is attacked by petitioners on the ground that no guidelines are set forth in the regulation with respect to the method of measurement. However, respondents allude to an internal directive, which is not contained in the papers, instructing inspectors to measure the 200 feet from building line to building line, and in cases where the building is set back from the property line, from property line to property line. In short, from closest point to closest point.
In the case of Tommy & Tina, Inc., its license was revoked based on a measurement from the building line of petitioner’s premises to the property line of P.S. 9. The property line was measured from a fence that surrounds P.S. 9. Petitioner Dastagirzada’s license was revoked based upon a measurement from petitioner’s building line to the closest property line of P.S. 86, in this case the outer fence of a double fence that surrounds the school.
Petitioners argue that a more rational method of measuring the distance between premises under regulation No. 1(a) would be from door line to door line. This is the standard used by the New York State Liquor Authority in measuring its 200-foot requirement. (Alcoholic Beverage Control Law, § 105, subd 3.) Petitioner Tommy & Tina, Inc., qualify for a beer license since it is more than 200 feet from the school when measured from door line to door line, *418 but within 200 feet as measured by the Department for purposes of a common show license.
Regulation No. 1(a) was promulgated pursuant to the power of the commissioner of the Department to carry out the powers and duties of the Department to protect the health and safety of the residents of the City of New York and to promote their general welfare. (Administrative Code, §§ 773-1.0, 773-4.0.)
No method of measurement was set forth in the regulation, instead, an internal directive was issued to Department inspectors requiring measurement from building line or property line to building line, whichever is the closest distance between the two premises.
Respondent contends that the commissioner of the Department acted within his discretionary power in choosing to enforce regulation No. 1(a) by measuring from property line to building line rather than from door line to door line as the State Liquor Authority does for purposes of obtaining liquor licenses.
The Department alleges in its answer that it considered adopting the door line to door line form of measurement but chose not to on the ground that the simplest and most effective way would be to measure from building line to building line along the shortest route possible. To do otherwise, the Department concluded, would produce incongruous results in that if a video arcade and a school were located back to back, the distance from doorway to doorway of each premises might still be over 200 feet.
However, petitioners cite this same situation as evidence of the irrationality of the building line or property line to building line scheme since it bears no relationship to the purpose for the regulation, namely, limiting the access of school children to common show games.
In fact, there is no question that limiting access of school children to the games is what the Department intended when promulgating regulation No. 1(a). The notice of opportunity to comment circulated by the Department pursuant to section 1105 of the Charter of the City of New York supports this conclusion. It provides that “A rule precluding licensing of premises within 200 feet of elemen *419 tary and secondary schools has been added in response to community fears that common show premises will tempt children to use the games during hours when they should be in school.”
Petitioners contend that where a common show premises and a school are located back to back on the same city block to measure from building line to building line would not be promoting the intent behind the regulation since where no access exists between buildings in the rear, access could only be gained by walking around the block which in many instances would be well over 200 feet. Whereas a measurement from closest points of the structures might only be two feet.
PROCEDURAL HISTORY
Petitioners have chosen to proceed by way of CPLR article 78 to challenge the revocation of their licenses on constitutional grounds.
An article 78 proceeding challenging the revocation of a license is in the nature of certiorari. (23 Carmody-Wait 2d, § 145:26.) In reviewing a determination of an administrative agency, after a judicial hearing, courts generally will not disturb the determination if it was based on substantial evidence. Where a question is raised concerning whether the hearing was based on substantial evidence, CPLR 7804 (subd [g]) requires Special Term to transfer the proceeding to the Appellate Division for a determination on that issue.
The determination of whether a question is raised concerning the substantial evidence issue is made in the first instance by Special Term. (Matter of Bieder v MacDuff, 283 App Div 725; Matter of Davis v Board of Regents, 283 App Div 591.)
Here the petitioners do not contest that their premises were within 200 feet of the respective schools as measured by the Department. The dispute hinges on whether the method of measurement being used by the Department is appropriate.
Accordingly, the question is one of law, not fact, and this court will resolve all issues.
*420 Having determined that this proceeding need not be transferred to the Appellate Division, a question is then presented as to whether an article 78 proceeding is the proper method for testing the constitutionality of regulation No. 1(a).
The proper remedy for a declaration that a statute or regulation is unconstitutional is a declaratory judgment action (CPLR 3001). However, where the court has jurisdiction over the necessary parties an article 78 proceeding may be converted into a declaratory judgment action to address the constitutional questions. (Matter of Overhill Bldg. Co. v Delany, 28 NY2d 449; CPLR 103, subd [c].)
So too, where a branch of an action or proceeding is appropriate for article 78 review and another aspect requires conversion to a declaratory judgment action, a hybrid action and proceeding has specifically been authorized to enable the court to pass upon both issues (Matter of Heimbach v Mills, 54 AD2d 982; Matter of Kovarsky v Housing & Dev. Admin., 31 NY2d 184).
Accordingly, the proceeding insofar as it challenges the constitutionality of regulation No. 1(a), will be converted to a declaratory judgment action for purposes of addressing the constitutional issue.
CONSTITUTIONALITY
Petitioners assert a two-pronged argument with respect to the unconstitutionality of regulation No. 1(a). They argue that the regulation is unconstitutionally vague by reason of the fact that no method of measurement is contained in the regulation. It is also argued that the regulation bears no substantial relationship to a legitimate purpose and is therefore unconstitutional.
VAGUENESS
The theory behind petitioner’s vagueness challenge is that since the method of measuring the 200 feet is not contained in the regulation, the method of measuring is left to the discretion of the commissioner or the inspectors, resulting in arbitrary enforcement of the regulation thereby rendering the regulation No. 1(a) unconstitutionally vague.
*421 It is a basic principle of due process that an enactment is void for vagueness if its prohibitions are not clearly defined. (Grayned v City of Rockford, 408 US 104; People v Illardo, 48 NY2d 408, 413.)
The test for determining the voidability of a statute or regulation for vagueness is whether persons “ ‘of common intelligence must necessarily guess at its meaning and differ as to its application’ ” (Smith v Goguen, 415 US 566, 572, n 8). Laws are vague if they do not give individuals fair notice of the conduct proscribed (Papachristou v City of Jacksonville, 405 US 156). Vague laws do not limit the exercise of discretion by law enforcement officials, thus they engender the possibility of arbitrary and discriminatory enforcement (Grayned v City of Rockford, supra).
It must be established that the enactment is vague not in the sense that it requires a person to conform his conduct to an imprecise but comprehensible normative standard, but rather in the sense that no standard of conduct is specified at all. (Coates v City of Cincinnati, 402 US 611.) Here the Department has promulgated a regulation which clearly sets forth that no common show license shall be issued for an establishment within 200 feet of an elementary or secondary public or private school. The fact that a precise method of measurement is not contained in the statute does not render the regulation,unconstitutionally vague. Although it would be preferable for the regulation to contain such a provision, as does subdivision 3 of section 105 of the Alcoholic Beverage Control Law, failure to contain such a provision cannot render a statute or regulation unconstitutional.
A legislative enactment carries with it an exceedingly strong presumption of constitutionality and only as a last resort will courts strike down a legislative enactment on the ground of unconstitutionality. (Martin v State Liq. Auth., 43 Misc 2d 682, affd 15 NY2d 707.)
It is not always necessary that license legislation prescribe a specific rule of action and where it is difficult or impractical for the Legislature to lay down a definite and comprehensive rule a reasonable amount of discretion may be delegated to the administrative officials (Martin v State Liq. Auth., supra).
*422 The above-stated principles concerning vagueness of statutes apply equally to regulations governing commercial activities if violation of the regulation engenders penalties (Seagram & Sons v Hostetter, 384 US 35). Here petitioners Tommy & Tina, Inc., and Dastagirzada are faced with criminal penalties for operating video games without a common show license.
The regulation challenged conveys a sufficiently definite warning as to the proscribed conduct when measured by common understanding and practices. (United States v Petrillo, 332 US 1.) As the Supreme Court stated in Boyce Motor Lines v United States (342 US 337, 340), “[n]or is it unfair to require that one who deliberately goes perilously close to an area of proscribed conduct shall take the risk that he may cross the line.”
The Department cannot be forced to adopt the method of measurement employed by the State Liquor Authority.
Courts will not interfere with the details of enforcement or public administration nor will they interfere with the exercise of discretion in the enforcement of statutes. (Matter of Perazzo v Lindsay, 30 AD2d 179, affd 23 NY2d 764.) The construction given statutes and regulations by the agency responsible for their administration will, if not irrational or unreasonable, be upheld. (Matter of Howard v Wyman, 28 NY2d 434.)
It is clear that regulation No. 1(a) is not void for vagueness. It prohibits the issuance of a common show license to an establishment within 200 feet of a public or private elementary or secondary school. The construction and enforcement of this regulation by the Department is within the authority contained in section 773-1.0 of the Administrative Code of the City of New York to promote the health, safety and welfare of the public. The regulation of video games come within the power of the Department to regulate conduct that impacts on the health, safety and welfare of the public. Accordingly, the court finds that the regulation is not unconstitutionally vague.
LEGITIMATE PURPOSE
The next argument regarding the constitutionality of regulation No. 1(a) is that even if regulation No. 1(a) is not *423 vague it bears no substantial relationship to a legitimate purpose and is therefore, unconstitutional. Petitioners also contend that the Department has exceeded its authority to protect the public health, safety and welfare by regulating the video game industry and children’s access to video games. It is argued that the purpose behind the regulation, the prevention of truancy, is not the responsibility of the Department. It is also argued that the regulation infringes upon conduct protected by the First Amendment and is therefore unconstitutional. In support of this argument petitioners cite Aladdin’s Castle v City of Mesquite (630 F2d 1029). There, the court struck down a city ordinance that prohibited children under 17 years of age from operating amusement devices unless accompanied by a parent or guardian as unconstitutional under United States and Texas Constitutions. The court also found (p 1034, n 6) a provision of the city licensing ordinance directing the police chief to consider whether a license applicant has any “connections with criminal elements” unconstitutionally vague.
Neither party to this proceeding points out that this decision was reversed by the United States Supreme Court (City of Mesquite v Aladdin’s Castle, 455 US 283). The Supreme Court reversed on the vagueness question holding that the applicant’s possible connection with criminal elements is merely a subject that the ordinance directs the chief of police to investigate before he makes a recommendation concerning a pending application. The court stated that the Federal Constitution does not preclude a city from giving vague or ambiguous directions to officials authorized to make investigations and recommendations. (455 US, at p 291.)
The court remanded on the 17-year-old age requirement, finding that it was unclear whether the Court of Appeals had declared the provision unconstitutional under the Texas Constitution which would constitute an independent State ground for the decision making it unnecessary to decide the Federal constitutional question.
In deciding this question at the outset it must be determined whether the conduct that the enactment regulates is protected by the First Amendment (US Const, 1st Arndt). *424 The majority view appears to be that video games are not' protected.
In addressing a challenge to the zoning and licensing scheme controlling video games the United States District Court in America’s Best Family Showplace Corp. v City of New York, Dept. of Bldgs. (536 F Supp 170 [McLaughlin, J.]), found that video games contain so little in the way of particularized form of expression that they could not be fairly characterized as a form of speech protected by the First Amendment. (536 F Supp, at p 174; see, also, City of New York v Rambling Ram Realty Corp., NYLJ, June 29, 1982, p 6, col 1; Playtime Games v City of New York, NYLJ, June 15, 1982, p 12, col 6.) Video games were found to be speech protected by the First Amendment in Gameways, Inc. v McGuire (NYLJ, May 27, 1982, p 6, col 2). However, as was pointed out in Rambling Ram Realty Corp. u City of New York (supra), the court in Gameways, Inc. v McGuire (supra), did not have the issue of whether video games constitute First Amendment speech squarely before it. The issue before the court was the constitutionality of the police department’s enforcement of common show licensing requirements.
This court chooses to follow America’s Best Family Showplace Corp. v City of New York, Dept. of Bldgs, (supra) and Rambling Ram Realty Corp. v City of New York (supra), and finds that video games are not a form of speech protected by the First Amendment. No information is imparted to the user nor is any idea being communicated. In the absence of any proof that the games involved are of a different nature than the games considered in the aforementioned cases and are substantially the same, this court finds that the video games herein are not speech protected by the First Amendment.
Since video games will not be afforded First Amendment protection the validity of the regulation will be tested by the standard enunciated by the Supreme Court in Schad v Borough of Mt. Ephraim (452 US 61). The licensing regulation involved here flows from the over-all zoning scheme for common shows. In the absence of a First Amendment right, a municipality has broad power to control land use through zoning laws which are rationally related to legiti *425 mate State concerns and do not deprive the owner of the economically viable use of his property (Schad v Borough of Mt. Ephraim, 452 US, at p 68).
It is only when an enactment infringes upon a protected liberty that it be narrowly drawn and must further a sufficiently substantial government interest. (Schad v Borough of Mt. Ephraim, supra). Here, it has not been demonstrated that the city’s licensing and zoning scheme for video games is not a legitimate exercise of the city’s police power. As was stated in America’s Best Family Showplace (supra, p 174) in upholding the city’s zoning and licensing scheme: “Amusement arcades have attracted much media and community attention of late. The City has noted their proliferation and their deleterious effect upon the quality of life in the City’s neighborhoods to justify regulating their operation. Amusement arcades attract large numbers of people for short periods of time. The City’s regulatory provisions minimize the problems of noise and congestion and provide for the stable development of local communities, free from unnecessary noise and congestion.”
Added to this general purpose is the protection of school children from the temptation of truancy. Although no correlation between truancy and video games has yet been established, it cannot be argued but that the games are extremely popular with a large number of school age children. Accordingly, it is not unreasonable or irrational for the Department to restrict the licensing of the games near schools.
There is a rational basis for the regulation, and it is not unconstitutionally vague. As it is undisputed that petitioners are within 200 feet of a public or private elementary or secondary school, as measured by the inspectors of the Department of Consumer Affairs, the revocation of their common show licenses was not arbitrary or capricious and will not be disturbed.
Petition denied.