**Joseph P. MICILCAVAGE, Plaintiff,**

v.

**William CONNELIE, Nicholas G. Lecakes, Alfred E. Smith, Timothy Rabbett, Defendants.**

No. 82–CV–1232.

United States District Court, N.D. New York.

Aug. 4, 1983.

Earl D. Butler, Vestal, N.Y., for plaintiff.

Robert Abrams, Atty. Gen., State of N.Y., Albany, N.Y., for defendants; Alan S. Kaufman, Asst. Atty. Gen., Albany, N.Y., of counsel.

## MEMORANDUM–DECISION AND ORDER

MUNSON, Chief Judge.

Plaintiff is a member of the New York State Police and has served as a Trooper for over twenty years. Following a hearing upon specified charges, plaintiff was found guilty of violating a departmental regulation and placed on probation for six months. In addition, a formal letter of censure was placed in his permanent file. The regulation at issue in the instant case provides:

> In accord with Instructions, a Member shall not deliver a public address or speech, or participate in any public forum, or lecture or instruct any group of persons without the authorization of the Superintendent, and a Member shall not participate as a judge or as a sponsor of public contests or debates without the authorization of the Superintendent.

NYSP Administrative Manual, Regulation 8.27. *See* Appendix. In plaintiff's view, such disciplinary action violated his first

amendment right to free speech. Accordingly, plaintiff commenced this civil rights action alleging a violation of 42 U.S.C. § 1983 (Supp. IV 1980). Jurisdiction is predicated upon 28 U.S.C. § 1343 (1976).

## I

As noted above, plaintiff has served as a New York State Trooper for more than twenty years. Over the past several years, plaintiff has given speeches on the subject of drug and alcohol abuse to various community and civic organizations. Based upon his experience as a Trooper and his speechmaking activities, plaintiff had become somewhat of an authority on the subject of drug and alcohol abuse. Moreover, plaintiff's speeches were well received by the public and caused him to become a frequently requested speaker. In this regard, it appears as though plaintiff gave 13 speeches on this topic during 1980 and 1981.

The problem giving rise to the instant litigation arose in October of 1981 when plaintiff was requested to give a speech on drug and alcohol abuse to the Village of Greene Central School District P.T.A. Plaintiff did not follow the Instructions reprinted in the Appendix, but instead simply prepared for, and delivered, his speech on January 18, 1982. Plaintiff introduced himself as a concerned parent who has been a Trooper with nineteen years experience. During the course of the speech, which was presented during his off-duty hours, plaintiff generally discussed the laws applicable to the subject and displayed various articles and paraphernalia associated with drug and alcohol abuse. Plaintiff's speech was both truthful and accurate, and there is no issue in the present case as to the manner in which the speech was presented. Rather, plaintiff was disciplined for making *a* speech without permission.

As a result of the January 18, 1982 speech, plaintiff was formally charged with violating Regulation 8.27 of the NYSP Administrative Manual. In addition, plaintiff was charged with violating Regulation 8.41 for engaging in misconduct and acting in a manner tending to bring discredit upon the Division of the State Police. Following a formal hearing on the charges, plaintiff was found guilty of violating Regulation 8.27 and not guilty of violating Regulation 8.41. Plaintiff was issued a letter of censure and placed on probation for a period of six months. The terms of the probation required plaintiff to refrain from giving any speech on any subject relating to his employment without first obtaining Division approval.

This action was commenced by plaintiff on November 5, 1982 and seeks expungement of the reprimand and probation from plaintiff's service record and an injunction preventing enforcement of Regulation 8.27 against the plaintiff. In addition, plaintiff seeks a declaratory judgment that Regulation 8.27 is vague, overbroad, and a prior restraint on the exercise of plaintiff's first amendment rights. Presently before the Court are cross-motions for summary judgment by the parties pursuant to Rule 56 of the Federal Rules of Civil Procedure.

## II

The law is well settled that "a state cannot condition public employment on a basis that infringes the employee's constitutionally protected interest in freedom of expression." *Connick v. Myers,* —— U.S. ——, ——, 103 S.Ct. 1684, 1687, 75 L.Ed.2d 708 (1983) (citing *Keyishian v. Board of Regents,* 385 U.S. 589, 605–06, 87 S.Ct. 675, 684–85, 17 L.Ed.2d 629 (1967); *Pickering v. Board of Education,* 391 U.S. 563, 568, 88 S.Ct. 1731, 1734, 20 L.Ed.2d 811 (1968)). Rather, as the Court established in the *Pickering* case, the state must "balance between the interests of the [employee], as a citizen, in commenting upon matters of public concern and the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees." 391 U.S. at 568, 88 S.Ct. at 1734. Accordingly, this Court's first inquiry must be whether the subject matter of plaintiff's speech was a matter of "public concern," or was simply an unauthorized expression or comment on internal State

Police policy. *See Connick v. Myers,* ——
U.S. ——, 103 S.Ct. at 1667–68.

■ The question of whether an employee's speech touches upon a matter of public concern "must be determined by the content, form, and context of a given statement, as revealed by the whole record." *Id.* at ——, 103 S.Ct. at 1690. A close reading of defendants' memorandum of law reveals that defendants believe plaintiff's speech to be covered by the *Pickering* analysis. Defendants do not argue that the subject of plaintiff's speech was outside of the realm of "public concern." Rather, defendants appear to argue that the subject of drug and alcohol abuse is a matter of grave public interest and that the Division of the State Police have been specifically charged with administering the laws in this area. Therefore, defendants assert that they must exercise special control over their employees who purport to speak on behalf of the State Police.

In this Court's view, plaintiff's speech concerned a subject that is at the forefront of the public interest. Thus, unlike the situation presented in *Connick v. Myers* where a disgruntled employee circulated a petition that largely challenged her employer's administration of the office, the facts of the present case indicate that plaintiff was disciplined for exercising his first amendment rights on a subject of "public concern" within the meaning of the *Pickering* decision. There can be little doubt that the public has a legitimate interest in controlling drug and alcohol abuse by the members of society. Thus, the Court will proceed to a discussion of the so-called "*Pickering* balance."

### III

### A

■ In *Kelley v. Johnson,* 425 U.S. 238, 96 S.Ct. 1440, 47 L.Ed.2d 708 (1976), the Supreme Court upheld a county regulation limiting the length of a policeman's hair. In so doing, the Court recognized that it had already sustained "comprehensive and substantial restrictions upon activities of both federal and state employees lying at the core of the First Amendment." *Id.* at 245, 96 S.Ct. at 1444 (citing *United States Civil Serv. Comm'n v. National Ass'n of Letter Carriers,* 413 U.S. 548, 93 S.Ct. 2880, 37 L.Ed.2d 796 (1973); *Broadrick v. Oklahoma,* 413 U.S. 601, 93 S.Ct. 2908, 37 L.Ed.2d 830 (1973). Although the interest claimed to have been infringed in *Kelley v. Johnson* was a liberty interest under the fourteenth amendment, the Court referred to the familiar *Pickering* analysis which was originally formulated in the first amendment area.

The *Kelley* Court observed that the hair-length rule could not be examined in isolation, but instead must be viewed "in the context of the country's chosen mode of organization for its police force." 425 U.S. at 247, 96 S.Ct. at 1445. Uniform hair-length, like similarity in appearance and conduct, was believed by the police force to be an important factor in establishing a desired measure of discipline and esprit de corps. The Supreme Court held that such a consideration was permissible for a paramilitary organization like a police force and determined that the regulation was a reasonable exercise of administrative discretion.

In the present case, however, the regulation at issue cuts far more deeply into the constitutional liberties of the individual than does the hair-length regulation in *Kelley v. Johnson.* Here, the regulation prohibits the exercise of a claimed first amendment freedom.

Plaintiff relies principally on *Muller v. Conlisk,* 429 F.2d 901 (7th Cir.1970), a case in which certain regulations of the Chicago Police Department were struck down as being violative of the first amendment. *Muller* is plainly distinguishable, however, because the regulations therein forbid any comments or speech "which [was] derogatory to the Department or any member or policy of the Department." *Id.* at 902. Here, plaintiff's speech did not concern the operation of the Division of State Police. Instead, plaintiff was disciplined for speaking out on a subject that concerned both the

public and the State Police. Accordingly, *Muller v. Conlisk* is not controlling.

To the contrary, defendants rely on *Vorbeck v. Schnicker,* 660 F.2d 1260 (8th Cir. 1981), a case dealing with regulations promulgated by the St. Louis Police Department. In *Vorbeck,* the Eighth Circuit examined a host of regulations dealing with the conduct, both off and on-duty, of St. Louis police officers. The court reasoned that under the Supreme Court's decision in *Kelley v. Johnson,* the broad regulations survived constitutional attack. Of particular import to the instant case is the following quotation in *Vorbeck* from the *Kelley* case:

> The promotion of safety of persons and property is unquestionably at the core of the State's police power, and virtually all state and local governments employ a uniformed police force to aid in the accomplishment of that purpose. Choice of organization, dress, and equipment for law enforcement personnel is a decision entitled to the same sort of presumption of legislative validity as are state choices designed to promote other aims within the cognizance of the State's police power. [citations omitted] Having recognized in other contexts the wide latitude accorded the government in the 'dispatch of its own affairs,' *Cafeteria Workers v. McElroy,* 367 U.S. 886, 896 [81 S.Ct. 1743, 1749, 6 L.Ed.2d 1230] (1961), we think Suffolk County's police regulations involved here are entitled to similar weight.

*Kelley v. Johnson,* 425 U.S. at 247, 96 S.Ct. at 1445. Based upon the above language, defendants argue that their regulations are narrowly tailored to serve the purpose of promoting a unified and efficient law enforcement agency. Because "policemen, like teachers and lawyers, are not relegated to a watered-down version of constitutional rights," *Garrity v. New Jersey,* 385 U.S. 493, 500, 87 S.Ct. 616, 620, 17 L.Ed.2d 562 (1967), this Court will carefully examine the proffered reasons behind Regulation 8.27 and determine whether they are in fact reasonable under the circumstances.

**B**

In support of defendants' motion for summary judgment, defendant William P. Connelie, Superintendent of the New York State Police, has submitted a lengthy affidavit which explains the purpose and policy behind Regulation 8.27. According to Connelie, Regulation 8.27 and its implementing Instructions

> are intended to regulate who makes public speeches and lectures on behalf of the State Police in order to preserve the public image of the State Police and the confidence of the public in the efficiency of the State Police and its ability to fairly administer the laws, without bias or favoritism, or the appearance of bias or favoritism.

Connelie Affidavit ¶ 9. This is particularly important, Superintendent Connelie states, due to the organization of the State Police as a para-military organization with a central command, disciplined rank and file, and uniform dress and appearance. *Id.* ¶ 11. Without some regulation as to which Members may make speeches or give lectures on subjects which directly impact on the duties and responsibilities of the State Police, Connelie claims that there would be "a severe detrimental impact on the discipline, efficiency and efficacy of the State Police." *Id.* ¶ 16.

With regard to the subject of plaintiff's speech, Connelie explains that the topic of drug and alcohol abuse is of particular importance to the State Police. He points out that the public is also aware of this problem due to New York's stringent laws on the subject of driving while intoxicated. *Id.* ¶ 19. Moreover, a cursory examination of the NYSP Field Manual reveals the large role that the New York State Police play in combatting these problems. For example, an entire chapter in the Field Manual is devoted to DWI Enforcement, and discussions of these topics appear in other chapters throughout the Manual.

In furtherance of these policies, plaintiff's Troop Commander, Major Muthig, had instituted his own practice which based the assignment of speeches on both a Trooper's

expertise and the geographical location of his patrol. Thus, knowledgeable Troopers would be assigned to give speeches within their own community whenever possible. Major Muthig had informed plaintiff that he would not be giving any more speeches until his attitude and productivity improved. It appears from a careful review of the record in this case that plaintiff was aware that, if he had submitted his speech request to Major Muthig in accordance with Regulation 8.27, the Major would not have assigned plaintiff to give the speech. Nevertheless, plaintiff asserts that he did not submit the speech request for approval because the request came for a time when plaintiff would be off-duty.

This Court has thoroughly examined the transcript of the hearing conducted by the Division of the State Police in the matter of plaintiff and the charges lodged against him. In addition, the Court has reviewed all of the submissions by the parties. After careful consideration, the Court finds that the plaintiff's speech-making activities could constitutionally be regulated.

Plaintiff was contacted by officials of the Greene Central School District and was requested to deliver a speech on the subject of drug and alcohol abuse. Although plaintiff was initially contacted at his residence by phone, the School District sent letters to plaintiff at his duty station addressed as "Trooper J.P. Micilcavage, 3311 East Main Street, Endwell, New York." Plaintiff introduced himself as "Joseph P. Micilcavage, a concerned parent and citizen that [sic] had been a Trooper with 19 years experience." While plaintiff is indeed a parent of school-age children, it is interesting to note that the speech was given at a school in a district other than the one that his children attended.

In his own testimony at the hearing, plaintiff asserted that he did not believe Regulation 8.27 applied because the request was for a time when he was not "on-duty." This is not, however, dispositive of the issue before the Court. In his experience giving authorized speeches, plaintiff explained that he had given speeches both off and on-duty. Moreover, plaintiff testified that on different occasions he requested and was given permission to give off-duty speeches while in uniform. In the present case, plaintiff's speech was delivered while he was off-duty and in civilian clothes.

As to the topic of the speech, plaintiff presented the law as it related to the enforcement of controlled substances, sales, and possession. In conjunction with his speech, plaintiff displayed a variety of articles and paraphernalia associated with drug and alcohol abuse, and identified various drugs by using simulated visual aids. Taken as a whole, the Court concludes that the presentation conveyed the view that plaintiff was representing the New York State Police when he spoke to the P.T.A. As such, plaintiff's conduct constituted a violation of Regulation 8.27. While this Court makes no finding on the propriety of sanctioning plaintiff for doing a public service and placing the Division of the State Police in a better light within the community, plaintiff did commit a technical violation of Regulation 8.27 and was, therefore, subject to sanctions.

The Supreme Court in *Pickering v. Board of Education,* and more recently in *Connick v. Myers,* instructed courts to balance between the interests of the employee as a citizen and the employer as a provider of public services when faced with first amendment issues. In the present case, the Court concludes that this balance cuts in favor of the defendants.

Plaintiff's speech was not simply one made by a citizen concerning a problem facing society. Rather, the speech was one describing the law as it relates to the *enforcement* of drug and alcohol abuse laws. This is a topic of major concern to the New York State Police, and the public is fully aware of the role that the State Police play in the enforcement of these laws. Had plaintiff merely given a presentation on the evils of drug and alcohol abuse, the considerations before this Court would have been different. *See Connick v. Myers,* —— U.S. at ——, 103 S.Ct. at 1691–92. However, plaintiff did not do this. He chose to speak

on the enforcement of the law, a subject directly related to plaintiff's work as a Trooper. Thus, in this Court's view, it is irrelevant that the speech took place during plaintiff's off-duty hours.

Defendants assert that they have a genuine need to regulate those persons who speak on behalf of the State Police. While the facts of the present case do not suggest that any harm came to the reputation of the State Police, or that its ability to properly enforce the laws was in any way hampered, defendants also claim that Regulation 8.27 serves to promote discipline. Based upon the Supreme Court's decision in *Kelley v. Johnson,* this claim is entitled to great weight by this Court. 425 U.S. at 247, 96 S.Ct. at 1445 (citing *Cafeteria Workers v. McElroy,* 367 U.S. 886, 896, 81 S.Ct. 1743, 1749, 6 L.Ed.2d 1230 (1961)).

Under the facts of the present case, the Court finds that the reasons advanced by defendants in support of Regulation 8.27 are reasonably related to the promotion of employee discipline and protection of the reputation of the New York State Police. In their present form, however, the Regulation and its accompanying Instructions cannot withstand constitutional scrutiny.

### C

■■■ "Vagueness and overbreadth are matters of degree and context." *Vorbeck v. Schnicker,* 660 F.2d at 1262 (citing *Broadrick v. Oklahoma,* 413 U.S. 601, 615–16, 93 S.Ct. 2908, 2917–18, 37 L.Ed.2d 830 (1973)). The general rule in this area is that "a person to whom a statute may constitutionally be applied may not challenge that statute on the ground that it may conceivably be applied unconstitutionally to others in situations not before the Court." *New York v. Ferber,* —— U.S. ——, ——, 102 S.Ct. 3348, 3360, 73 L.Ed.2d 1113 (1982) (citations omitted). However, when the statute *sub judice* is drafted in such a manner that it may not be constitutionally applied to that person, a challenge of facial unconstitutionality should be entertained. In this Court's view, Regulation 8.27 is so overbroad and vague that it could not have

formed the basis for the disciplinary action taken against plaintiff Micilcavage.

■■ The express purpose behind Regulation 8.27 was to exercise some control over who delivers speeches on behalf of the New York State Police. However, the Regulation proscribes *all* speeches, not simply those dealing with New York State Police business or functions. This problem could have been remedied by the qualifying Instructions set forth in the Appendix, but unfortunately these Instructions also suffer from the same deficiency as the main Regulation. Under Article 18D1 of the Instructions, the policy section, it is stated that Members of the State Police will be selected and assigned to make public appearances before organizations as requested. No mention is made with regard to the subject matter of the speeches to be given, nor is there any mention of possible exceptions to the policy. Indeed, plaintiff's Troop Commander Major Muthig stated at the hearing that there were no exceptions to this policy.

With regard to overbreadth, the Supreme Court has held that the statute involved must be "substantially overbroad" before it will be invalidated on its face. *Id.* at ——, 102 S.Ct. at 3361. Here, this Court finds that Regulation 8.27 sweeps too broad over the range of conduct of New York State Troopers. As noted above, defendants may constitutionally regulate certain types of activities by Troopers. They may not do so, however, under regulations that give supervisory officials the power to curb speech at their own discretion.

At the hearing Lieutenant Besser, one of plaintiff's supervisors, testified that Regulation 8.27 would not apply in the simple case of a parishioner who was asked to give a speech on his religious convictions in a church, but would apply if the same parishioner were then asked to speak on the vehicle and traffic or drug laws. Thus, Regulation 8.27 attempts to regulate speech based solely on its content. *See Grayned v. City of Rockford,* 408 U.S. 104, 115, 92 S.Ct. 2294, 2302, 33 L.Ed.2d 222 (1972); *Police Dep't of City of Chicago v. Mosley,* 408 U.S. 92, 95, 92 S.Ct. 2286, 2289, 33 L.Ed.2d 212

(1972). The Regulation must fail, however, because it is not "narrowly tailored" to further the professed goals of the New York State Police. *Grayned v. City of Rockford*, 408 U.S. at 116–17, 92 S.Ct. at 2303; *Police Dep't of City of Chicago v. Mosley*, 408 U.S. at 98, 92 S.Ct. at 2291. If the Regulation had simply stated that which defendants claim that it already did, then plaintiff could not be heard to complain. In the present case, supervisory officials of the Division of the State Police have been given unbridled authority to determine what types of speech may or may not be regulated. Under our system of jurisprudence, such a scheme cannot stand. *Southeastern Promotions, Ltd. v. Conrad*, 420 U.S. 546, 560, 95 S.Ct. 1239, 1247, 43 L.Ed.2d 448 (1976); *Freedman v. Maryland*, 380 U.S. 51, 58, 85 S.Ct. 734, 738, 13 L.Ed.2d 649 (1965).

■ With regard to vagueness, defendants are correct that the test to be applied is whether "men of common intelligence must necessarily guess at its meaning." *Broadrick v. Oklahoma*, 413 U.S. at 607, 93 S.Ct. at 2913 (citing *Connally v. General Constr. Co.*, 269 U.S. 385, 391, 46 S.Ct. 126, 127, 70 L.Ed. 322 (1926). Here, although defendants assert that Regulation 8.27 and its accompanying Instructions are clear in defining what types of speeches must be submitted for prior approval, the Court finds that the ordinary New York State Trooper would have to guess at their meaning. While the facts of this case may suggest that plaintiff understood the meaning of Regulation 8.27, *see United States Civil Serv. Comm'n v. National Ass'n of Letter Carriers*, 413 U.S. at 579, 93 S.Ct. at 2897, this alone is not determinative of the cause. Plaintiff has steadfastly maintained that he did not know that Regulation 8.27 applied to him in his off-duty hours, and this assertion has not been adequately refuted by defendants. Moreover, the Regulation at issue simply does not say what defendants contend that it does. Accordingly, the Court holds that Regulation 8.27 violates the first amendment.

## IV

In conclusion, the Court finds that under the "*Pickering* balance," defendants may constitutionally regulate the speech-making activities of their employees. However, they may not do so under the guidelines set forth in Regulation 8.27 and its accompanying Instructions. The aforementioned policy is vague, overbroad, and acts as a prior restraint on the exercise of first amendment rights. Therefore, it is

ORDERED that defendants' motion for summary judgment is hereby denied and plaintiff's motion for summary judgment is hereby granted; and it is

ADJUDGED that Regulation 8.27 of the NYSP Administrative Manual is vague, overbroad, and a prior restraint on the exercise of first amendment rights. Defendants are hereby enjoined from enforcing Regulation 8.27 against plaintiff and are hereby directed to clear plaintiff's service record of all references to the discipline imposed for violating Regulation 8.27.

It is so Ordered.

## APPENDIX

The Instructions to which NYSP Administrative Manual, Regulation 8.27 refer are found in Article 18D of the same Manual. These Instructions are set out in full below.

### 18D  PUBLIC APPEARANCES

#### 18D1  *Policy*

(a) It is our Policy to select and assign Members to make public appearances before organizations as requested. Members may be assigned to give a short talk or speech at a meeting of various business, civic, fraternal, professional, social, religious, community, youth and educational organizations.

(b) In addition, on request, Members are assigned to deliver instructional lectures to criminal justice personnel of other agencies as a part of their training program.

(c) As a professional State law enforcement agency, it is necessary that our reputation for fairness in our relations

with all segments of the community are preserved. Therefore, our Members ARE NOT permitted to make speeches, lectures or public appearances before any political or discriminatory organization, groups at which controversial subject matters may be discussed, or groups whose main object in holding a meeting is to raise funds.

(d) Generally, a written request for a speaker or lecturer made to the Troop Commander 2 weeks prior to the desired date is required. This advance notice will permit time to schedule a Member.

**18D2 Handling Public Appearance Requests**

(a) Should a person make an oral request for a speaker or lecturer, *ask* the person to make his formal request by writing a letter to your Troop Commander AND to try to give him *at least* 2 weeks prior notice.

(b) *Station Supervisor:* IF you receive a written request for a speaker or lecturer, *send* it to your Troop Commander.

(c) *Assigned Member:* WHEN you are assigned to make a public appearance:
(1) DO NOT discuss OR make comment on political OR other controverial [sic]; AND
(2) WITHOUT the specific approval of your Troop Commander, DO NOT discuss matters pertaining to State Police planning.

**18D3 Speech Assignments**

(a) *Troop Commander:*
(1) *Review* ALL speech requests;
(2) EACH year, *try* to make a speech or other public appearance in ALL major cities and towns in your Troop area.
(3) *Give* a reasonable number of speeches yourself, concentrating on the larger, more significant groups AND those where news coverage is expected.
* IF you DO NOT plan to give the speech yourself, *assign* another Member to handle it.

* *Give* a reasonable number of speech assignments to your Commissioned Officers with emphasis on those assignments you consider more significant.
(4) *Prepare* a Request for Speaker Form (original AND 2 copies);
* *Keep* 1 copy for your tickler; THEN
* *Send* the original AND 1 copy of the Request to the Deputy Superintendent—Administration.

(b) *Deputy Superintendent—Administration:*
(1) *Approve* OR *disapprove* the Request;
(2) *Keep* the copy as your tickler; THEN
(3) *Return* the original Request to the Troop Commander with your Endorsement.

(c) *Troop Commander:*
(1) In a reply letter to the person requesting the speech, *give* any additional information that MAY be needed AND *give* the name of the Member assigned; THEN
(2) *Send* the original Request AND a copy of associated correspondence to the assigned Member.

(d) *Assigned Member:*
(1) *Prepare* to give a good speech;
(2) AFTER completing the assignment, *fill in* the section of the Request titled: *Completion Report;* THEN
(3) *Send* it to your Troop Commander.

(e) *Troop Commander:*
(1) *Complete* the section titled: *2nd Endorsement;* THEN
(2) *Return* the original Request to the Deputy Superintendent—Administration.

**18D4 Yearly Speech Report**

*Troop Commander:*

(a) In April of EACH year, *prepare* a Memorandum addressed to the Deputy Superintendent—Administration, subject: SPEAKING ENGAGEMENTS.

(b) In this Memorandum, *list* the name AND rank of EACH Commissioned Officer in your Troop AND the number of

speeches he made during the prior calendar year.

(c) *Send* this Memorandum to the Deputy Superintendent—Administration by May 1st.

18D5   *Lecture Assignments*

(a) *Troop Commander:*

(1) *Review* ALL lecture requests;

(2) *Select* AND tentatively *assign* a Member to give the lecture;

(3) *Prepare* a Request For Speaker form (original AND 2 copies);

* *Keep* 1 copy for your tickler; THEN

* *Send* the original AND 1 copy to the Deputy Superintendent—Administration, Attn: Major—Training.

(b) *Deputy Superintendent—Administration:*

(1) *Approve* OR *disapprove* the Request; AND

(2) IF approved, *send* BOTH the original AND the copy to the Major—Training.

(c) *Major—Training:*

(1) *Review* the Request AND search Academy files for an appropriate Lecture Outline that MAY be used by the assigned Member.

* IF an Outline IS available, *mention* this on the line labeled: *Remarks* in the 1st Endorsement section of the Request Form AND *attach* a photocopy of the Outline to the original of the Request Form.

* IF NO Outline is available, *mention* this on the line labeled: *Remarks* in the 1st Endorsement section of the Request Form AND *direct* the assigned Member to prepare AND use an Outline for his lecture and *submit* it through Channels to you.

(2) *Keep* a copy of the Request for your tickler; THEN

(3) *Return* the original to the Troop Commander.

(d) *Troop Commander:*

(1) In a reply letter to the person requesting the lecture, *give* any additional information that may be needed AND *give* the name of the Member assigned; THEN

(2) *Send* the original Request AND a copy of associated correspondence to the assigned Member.

(e) *Assigned Member:*

(1) *Prepare* to give a good lecture;

(2) IF A Lecture Outline IS sent by Major—Training, *use* that Outline AND *revise* it as you believe necessary.

(3) IF directed to prepare an Outline, *carefully prepare* an Outline for your lecture AND *use* it in giving your lecture.

(4) AFTER completing the assignment, *fill in* the section of the Request titled: *Completion Report.*

(5) *Attach* the Lecture Outline to the Request—either the one sent to you OR a copy of the one you prepared.

(6) *Return* the Request form with the attached Outline through Channels to your Troop Commander.

(f) *Troop Commander:*

(1) *Complete* the section titled: *2nd Endorsement* on the Request form; THEN

(2) *Return* the original Request with attached Outline to the Major—Training.

(g) *Major—Training:*

(1) *Detach* AND *file* the Lecture Outline; THEN

(2) *Return* the original Request to Deputy Superintendent—Administration.

(h) *Deputy Superintendent—Administration: File* the completed Request.

18D6   *Exhibits Or Displays*

(a) From time to time we make arrangements to present exhibits OR displays at fairs, expositions and other special events.

(b) *Troop Commander:* As a part of your effort to foster good public relations and to the extent possible and practicable, *arrange* for such exhibits OR displays.