OPINION OF THE COURT
Robert G. Hurlbutt, J.
By this proceeding brought pursuant to CPLR article 78, petitioner, a Deputy Sheriff of Onondaga County, challenges the validity of a disciplinary suspension imposed upon him by respondent Onondaga County Sheriff. The five-day suspension without pay was imposed by the Sheriff following a full evidentiary hearing and findings and recommendations by the Hearing Officer as required by section 75 of the Civil Service Law.
Petitioner seeks a determination that section 3.18 of the Onondaga County Sheriff’s Department Duty Manual, the rule *668 underlying the disciplinary action against him, is unconstitutional and that therefore the proceedings to enforce such rule are unlawful. Alternatively, he asserts that the determination for disciplinary action was unsupported by substantial evidence (CPLR 7803 [4]). For review on a question of substantial evidence, the matter would have to be transferred to the Appellate Division pursuant to CPLR 7804 (g).
The constitutionality of a legislative enactment or regulation may not be tested by an article 78 proceeding. Rather, that portion of the action raising constitutional questions should be and hereby is converted to a declaratory judgment action, all necessary parties being before the court. (Board of Educ. v Gootnick, 49 NY2d 683, 687; Matter of Overhill Bldg. Co. v Delany, 28 NY2d 449; 92-07 Rest. v New York State Liq. Auth., 80 AD2d 603; Matter of Tommy & Tina v Department of Consumer Affairs, 117 Misc 2d 415, 420, affd 95 AD2d 724, affd 62 NY2d 671; Matter of Hunt v Board of Fire Commrs., 68 Misc 2d 261.)
The parties’ submissions as to the constitutionality of the subject rule will be treated as a motion for summary judgment declaring the rule’s invalidity. (Hunt v Board of Fire Commrs., 68 Misc 2d 261, supra.) The facts, viewed in the light most favorable to respondent, disclose that in January 1988, petitioner, a Deputy Sheriff employed in the Public Safety Building Jail operated by respondent, requested permission to grant an interview with a newspaper reporter on the subject of overcrowded conditions in the jail. Respondents’ contention, and hearing evidence, was that Chief Deputy Sheriff Charles Pirro, Jail Division Head, granted permission for such an interview upon condition that it be conducted in Chief Pirro’s presence as well as in his office. Thereafter, petitioner did speak with a newspaper reporter concerning jail overcrowding, and was quoted in a newspaper article on the subject. Respondent then initiated disciplinary proceedings pursuant to Civil Service Law § 75, seeking penalties based upon alleged violation by petitioner of sections 1.11 and 3.18 of the Sheriff’s Department Duty Manual.
Sheriff’s Department Duty Manual § 1.11 mandates that "members shall, without unnecessary delay, obey all lawful * * * orders and instructions issued by competent authority.”
Section 3.18 of the Duty Manual provides as follows: "Members shall not, in their official position, make public statements or addresses or grant interviews concerning the county, *669 the department, public officials or other agencies without approval from competent authority.”
Petitioner challenges the constitutionality only of section 3.18. However, since the only order he is claimed to have disobeyed was in furtherance of that rule, if it is found unconstitutional, he may not be disciplined pursuant to section 1.11, since the order to comply would not be "lawful”. Petitioner contends that section 3.18 of the Duty Manual unconstitutionally impinges upon the right to free speech guaranteed him by the First and Fourteenth Amendments. I find the rule to be an unconstitutionally overbroad impingement of petitioner’s right to free speech and that his disciplinary proceedings thereunder must be nullified.
All citizens are guaranteed the right of free speech, without governmental interference. (Lovell v Griffin, 303 US 444.) Any enactments that regulate speech must effectuate a legitimate State interest, and must be narrowly drawn so as not to interfere needlessly with protected First Amendment rights. (Grayned v City of Rockford, 408 US 104; Shelton v Tucker, 364 US 479.) Reasonable and necessary limits can be placed upon speech, and that is particularly true as to the speech of public employees. (Pickering v Board of Educ., 391 US 563.)
"The problem [in cases involving free speech issues raised by government employees] is to arrive at a balance between the interests of the [public employee], as a citizen, in commenting upon matters of public concern and the interest of the [governmental entity], as an employer, in promoting the efficiency of the public services it performs through its employees.” (Pickering v Board of Educ., supra, at 568.)
Police officers, as public employees, are subject to somewhat more circumscribed rights of freedom of speech than are members of the public. However, "policemen, like teachers and lawyers, are not relegated to a watered-down version of constitutional rights.” (Garrity v New Jersey, 385 US 493, 500.) Those regulations encroaching upon a police officer’s right of free speech must be narrowly tailored to effectuate the department’s legitimate interests. (Grayned v City of Rockford, supra; Keyishian v Board of Regents, 385 US 589, 601; Shelton v Tucker, supra.) As aptly stated by then Supreme Court Justice Bernard S. Meyer in Matter of Hunt v Board of Fire Commrs. (68 Misc 261, 264-265, supra): "A rule which denies or unreasonably limits a constitutional right of a public employee is invalid, not because there is a constitutional right to public *670 employment, but because the constitutional rights of all citizens, public employees, included, may only be restrained for a reason rationally related to the public interests, which sufficiently benefits the public interest to outweigh the impairment of the individual’s constitutional right, and for which there exists no alternative less destructive of the individual’s constitutional right”.
Legitimate government interest in regulating the speech of police officers has been recognized "in order to promote efficiency, foster loyalty and obedience to superior officers, maintain morale, and instill public confidence in the law enforcement institution. To achieve these ends, regulations may be promulgated, but their restrictive effect may extend only so far as is necessary to accomplish a legitimate governmental interest.” (Gasparinetti v Kerr, 568 F2d 311, 315-316 [3d Cir 1977], cert denied 436 US 903.) In Gasparinetti (supra) the Third Circuit Court of Appeals struck down as facially unconstitutional police department rules forbidding derogatory, censuring or disparaging public statements concerning the police department. The regulations in that case were found to be constitutionally overbroad, and not worded in such a way as to limit their impingement upon free speech only insofar as necessary to further the legitimate public goals of promoting efficiency, fostering discipline, maintaining morale and instilling public confidence in law enforcement. The rules were found to indiscriminately include, along with speech which might properly be regulated, speech in which the department would have minimal legitimate interest. Moreover, the court found a strong public interest in open debate and access to information about its police. (Gasparinetti v Kerr, supra, 568 F2d, at 317.) Other Federal cases coming to the same conclusion under similar facts are O’Brien v Town of Caledonia (748 F2d 403 [7th Cir 1984]), Muller v Conlisk (429 F2d 901 [7th Cir 1970]) and Flynn v Giarrusso (321 F Supp 1295 [ED La 1971]).
In Micilcavage v Connelie (570 F Supp 975 [ND NY 1983]), State Police regulations prohibiting public speeches by State Troopers except upon approval of superior officers were invalidated as unconstitutionally overbroad. The court in that case acknowledged that the paramilitary structure of police agencies authorizes some strictures on their members’ constitutional freedoms, citing Kelley v Johnson (425 US 238). However, since the State Police regulation proscribed all unauthorized speeches, it was found to be overbroad and vague.
A Federal case nearly directly on point is Salerno v *671 O’Rourke (555 F Supp 750 [D NJ 1983]). In that case, a jail deputy warden challenged disciplinary proceedings against him based upon alleged violations of the following rules:
"2. No employee shall make disparaging remarks regarding any other employee or regarding the way affairs of the jail are conducted. Any suggestions for improvement of the jail management or comments regarding the conduct of another employee can be made to Internal Affairs Unit.
"3. Employees shall refrain from publicly discussing jail affairs when off duty.
"4. All information or publicity relative to the jails shall be given out by the Sheriff’s Office only. No employee is authorized to give information to newspaper representatives or any other person without the specific consent of the Sheriff.” (Salerno v O’Rourke, supra, at 757.)
The court, in finding all the rules facially overbroad, noted that the rule requiring permission of the Sheriff to release information "is so overinclusive facially as to leave no room whatsoever for legitimate exercise of free speech in areas of public concern or where virtually no disruption of the Sheriff’s Office is conceivable.” (Salerno v O’Rourke, supra, at 758.)
Onondaga County Sheriff’s Department Duty Manual § 3.18 is equally overbroad, and must be stricken as an unconstitutional infringement on petitioner’s freedom of speech. While the rule in this case, unlike Micilcavage v Connelie (supra), is limited to speech upon matters related to the Sheriff’s Department, the county, public officials or other agencies, it contains no other limitations whatever as to the character or extent of that unauthorized speech which it seeks to prohibit. Under section 3.18, no member of the Onondaga County Sheriff’s Department may publicly speak concerning any matter related to its business, regardless of the public significance of such matter and regardless of whether the speech has any impact whatever on agency discipline or the public image of the department. Such a proscription is clearly overbroad and unconstitutional. (Gasparinetti v Kerr, 568 F2d 311, supra; Salerno v O’Rourke, 555 F Supp 750, supra.)
As already noted, inasmuch as section 3.18 of the Duty Manual is unconstitutional, the order of Chief Pirro in connection therewith was not lawful, and petitioner could not be disciplined on either of the counts asserted against him.
Respondents’ contention that a finding of invalidity of the work rule on its face "cannot exonerate his disobedience to a *672 lawful order”, relying upon Matter of Ehmann v Whelan (118 AD2d 1023 [3d Dept 1986], lv denied 68 NY2d 607), is without merit. No case cited or found sustains disciplinary action based upon violation of an unconstitutional rule. In Ehmann, the court upheld discipline against an employee who contradicted the agency’s policy in carrying out his duties. The court in that case ruled that it was not significant whether the agency’s policy (i.e., forbidding the use of plastic pipe) could be upheld. There was no question as to the constitutionality, facially or as applied, of a work rule or regulation.
In accordance with the foregoing, petitioner is entitled to judgment (1) declaring that Onondaga County Sheriff’s Department Duty Manual § 3.18 is unconstitutional, and (2) nullifying the determination of respondent dated March 21, 1988 suspending petitioner without pay for a period of five days, and reimbursing petitioner for all unpaid wages resulting therefrom.